United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> EBAY, INC., <br><br> Defendant. | Case No.: 5:12-CV-05869-EJD <br><br> **ORDER DENYING EBAY'S MOTION TO DISMISS THE UNITED STATES' COMPLAINT** <br><br> **[Re: Docket No. 15]** |

Presently before the court in these antitrust actions is Defendant eBay Inc.'s ("eBay")

Motion to Dismiss Plaintiff the United States of America's ("United States") Complaint. No. 12-

CV-05869 Dkt. No. 15.  eBay has also moved to dismiss Plaintiff the People of the State of

California's ("California") (collectively with the United States, "Plaintiffs") Complaint in related

action No. 12-CV-05869.  The court held a hearing on these matters on April 26, 2013.  Having

reviewed the parties' briefing and heard the parties' arguments, and for the following reasons, the

court DENIES eBay's Motion as to the United States' Complaint.

**I.    BACKGROUND**

**a.  Factual Background**

This case concerns an alleged handshake agreement struck and occasionally refined by

eBay executives, including then-CEO Meg Whitman, and Scott Cook, the founder and Chairman of

1

Case No.: 5:12-CV-05869
ORDER DENYING EBAY'S MOTION TO DISMISS THE UNITED STATES' COMPLAINT

**United States District Court**
For the Northern District of California

1    the Executive Committee of Intuit, Inc. ("Intuit"), which restricted eBay and Intuit's ability to

2    recruit or hire candidates from one another.  The two complaints' factual allegations largely mirror

3    each other. Accordingly, the following factual background is taken solely from the United States'

4    Complaint and is assumed to be true for purposes of these Motions.  See No. 12-CV-05869, Dkt.

5    No. 1.

6         In November 2005, eBay's then-COO Maynard Webb wrote to Mr. Cook about a potential

7    hire from Intuit who had contacted eBay regarding a job.  Id. at ¶¶ 12, 15.  Mr. Webb proposed a

8    going-forward policy under which eBay would not actively recruit from Intuit, would give Intuit

9    notice before making offers to senior-level Intuit employees who had initially contacted eBay, and

10   would inform Intuit after lower-level employees had accepted offers from eBay.  Id.  Mr. Cook

11   objected to the proposal to the extent it allowed any hiring of Intuit employees without prior notice

12   to Intuit, explaining that "we don't recruit from board companies, period" and "[w]e're passionate

13   on this."  Id. at ¶ 15.  Mr. Cook committed that Intuit would refrain from making an offer to any

14   eBay employee without prior notice to eBay and stated that "[w]e would ask the same."  Id.

15        According to Plaintiffs, eBay and Intuit reached and implemented an initial no-solicitation

16   agreement by August 2006.  Id. at ¶ 17.  At that time, eBay was considering hiring an Intuit

17   employee to its Paypal subsidiary.  When approached about this hire, Beth Axelrod, eBay's Senior

18   Vice President for Human Resources at the time, stated that while she was "happy to have a word

19   with Meg [Whitman] about it," she was "quite confident [Ms. Whitman] will say hands off because

20   Scott [Cook] insists on a no poach policy with Intuit."  Id.  Ms. Axelrod went on to confirm with

21   Ms. Whitman that eBay in fact could not proceed with the hire without first notifying Mr. Cook.

22   Id.  eBay discontinued recruitment of that candidate, apparently because "everyone agreed 'that it's

23   to[o] awkward to call Scott [Cook] when [they] don't even know if the candidate has interest."  Id.

24        The parties continued to have discussions regarding recruiting and hiring in the ensuing

25   months.  In April 2007, Mr. Cook complained to Ms. Whitman that he was "quite unhappy" about

26   an offer eBay planned to make to an Intuit employee who had approached eBay.  Id. at ¶ 18.  In

27   response, Ms. Axelrod instructed David Knight, eBay's Vice President of Internal Communications

28   at the time, to hold off on making the offer.  Mr. Knight complained that the decision to hold back

                                              2
Case No.: 5:12-CV-05869
ORDER DENYING EBAY'S MOTION TO DISMISS THE UNITED STATES' COMPLAINT

the offer put the applicant "in a bad position and [eBay] in a bad place with California law." Id.  A

week later Mr. Knight explained that eBay "desperately need[ed] this position filled" and asked

Ms. Axelrod and Ms. Whitman "to at least 'negotiate' any shift from a 'no poaching' agreement to

a 'no hiring' agreement" after this particular applicant was hired.  Id.

Plaintiffs allege that although this candidate was ultimately hired, eBay and Intuit's

agreement thereafter "metastasized" into a no-hire policy.  Id. at ¶¶ 18-19.  "eBay recruiting

personnel understood that 'Meg [Whitman] and Scott Cook entered into the agreement (handshake

style, not written) that eBay would not hire from Intuit, period.'"  Id. at ¶ 21.  Similarly, "Mr. Cook

and Intuit…agreed that intuit would not recruit from eBay."  Id.

The Complaints contain several examples of eBay's understanding and implementation of

the agreement.  For instance, when approached by two eBay employees about the policy, Ms.

Axelrod explained that "[eBay] ha[s] an explicit hands of[f] that we cannot violate with any Intuit

employee.  There is no flexibility on this."  Id. at ¶ 20.  eBay repeatedly declined to interview or

hire Intuit employees, even when it had positions open for "quite some time" or when the only

acceptable candidate was from Intuit.  Id. at ¶ 23.

The Complaints also reflect Mr. Cook's understanding of the agreement.  When speaking

with a candidate who had decided to work for eBay but expressed interest in joining Intuit in the

future, Mr. Cook explained that "Intuit is precluded from recruiting [the candidate]" except under

limited circumstances.  Id. at 21.  Later, in August 2007, Ms. Whitman complained to Mr. Cook

that Intuit had been recruiting eBay employees in violation of the agreement.  Mr. Cook responded

saying "#@!%$#^&!!! Meg my apologies.  I'll find out how this slip up occurred again…."  Id. at ¶

22.

In 2009, the Department of Justice's  ("DOJ") investigation of no-solicitation/no-hire

agreements among technology companies became public.  Id. at ¶ 25.  According to Plaintiffs,

eBay and Intuit's agreement remained in effect for at least some period of time after this

announcement.  Id.  Since that time, a court in a separate action has ordered Intuit to refrain from

entering into or enforcing any agreement that improperly limits competition for employee services.

Id. at ¶ 9.

3

Case No.: 5:12-CV-05869
ORDER DENYING EBAY'S MOTION TO DISMISS THE UNITED STATES' COMPLAINT

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1

#### b. Procedural History

2      On November 16, 2012, Plaintiffs filed the instant actions against eBay, alleging that eBay

3   entered into a no-solicitation/no-hire agreement with Intuit in violation of Section 1 of the Sherman

4   Act, 15 U.S.C. § 1.  No. 12-CV-05869, Dkt. No. 1; No. 12-CV-05874, Dkt. No. 1.  California also

5   raises claims under the Cartwright Act, California Business and Professions Code § 16720, and the

6   California Unfair Competition Law ("UCL"), California Business and Professions Code § 17200 et

7   seq. No. 12-CV-05874, Dkt. No. 1 ¶¶ 39-48.  This court issued an order relating these two cases on

8   December 11, 2012.  No. 12-CV-05869, Dkt. No. 11; No. 12-CV-05874, Dkt. No. 4.  While

9   Plaintiffs point to Intuit as a co-conspirator, they have not named Intuit as a defendant in these

10   actions because it is already subject to a court order in United States v. Adobe Systems, No. 10-

11   01629 (D.D.C. Mar. 17, 2011), which prohibits it from entering into or enforcing any agreement

12   that improperly limits competition for employee services.  No. 12-CV-05869, Dkt. No. 1 ¶ 9.

13      On January 22, 2013, eBay filed the instant Motions to Dismiss pursuant to Fed. R. Civ. P.

14   12(b)(6) for failure to state a claim on the grounds that both Complaints fail to allege an actionable

15   conspiracy and fail to allege harm to competition.  eBay brings its Motion to Dismiss California's

16   Complaint on the additional grounds that California lacks standing to assert a claim for injunctive

17   relief under the Sherman Act and that it fails to state a claim under the Cartwright Act or the UCL.

18   No. 12-CV-05874, Dkt. No. 9.  The court now turns to the substance of eBay's motion as to the

19   United States' Complaint.

20   ## II.    LEGAL STANDARD

21      Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim in the

22   complaint with sufficient specificity to "give the defendant fair notice of what the ... claim is and

23   the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)

24   (internal quotations omitted).  A complaint which falls short of the Rule 8(a) standard may be

25   dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

26   Dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is "proper only

27   where there is no cognizable legal theory or an absence of sufficient facts alleged to support a

28   cognizable legal theory." Shroyer v. New Cingular Wireless Servs., Inc., 606 F.3d 658, 664 (9th

4

**United States District Court**
For the Northern District of California

1    Cir. 2010) (quoting <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001)). In considering whether

2    the complaint is sufficient to state a claim, the court must accept as true all of the factual

3    allegations contained in the complaint. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). While a

4    complaint need not contain detailed factual allegations, it "must contain sufficient factual matter,

5    accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Id.</u> (quoting <u>Twombly</u>, 550

6    U.S. at 570).

7    **III.    DISCUSSION**

8    **A.  Sherman Act Claim**

9    Section 1 of the Sherman Act, 15 U.S.C. § 1, prohibits "[e]very contract, combination…or

10   conspiracy[] in restraint of trade or commerce among the several States." Despite this broad

11   language, the Supreme Court has recognized that Congress intended only to "outlaw …

12   unreasonable restraints." <u>Texaco Inc. v. Dagher</u>, 547 U.S. 1, 5 (2006). Thus, to state a claim under

13   Section 1, a plaintiff must allege (1) a contract, combination, or conspiracy between two or more

14   entities; (2) in unreasonable restraint of trade; that (3) affects interstate commerce. <u>See</u> 15 U.S.C. §

15   1; <u>Am. Ad Mgmt., Inc. v. GTE Corp.</u>, 92 F. 3d 781, 788 (9th Cir. 1996). Here, eBay argues that

16   the United States has failed to adequately allege the first and second prongs of its Section 1 claim.

17   **1.  Actionable Conspiracy**

18   eBay first contends that the United States has failed to state an actionable agreement

19   between itself and Intuit because the allegations in the Complaint solely reflect conversations

20   between eBay and Mr. Cook, an overlapping director of both companies. To be actionable under

21   Section 1, any alleged conspiracy must, <u>inter alia</u>, involve "independent centers of

22   decisionmaking," <u>i.e.</u>, at least two distinct entities engaging in concerted activity. <u>Copperweld</u>

23   <u>Corp. v. Independence Tube Corp.</u>, 467 U.S. 752, 768-69 (1984) (holding that a parent corporation

24   and its wholly owned subsidiary are incapable of conspiring with one another); <u>see</u> <u>Freeman v. San</u>

25   <u>Diego Ass'n of Realtors</u>, 322 F.3d 1133, 1149 (9th Cir. 2003) ("where firms are not an economic

26   unity and are at least potential competitors, they are usually not a single entity for antitrust

27   purposes"). Typically, "[o]fficers or employees of the same firm do not provide the plurality of

28   actors imperative for a § 1 conspiracy." <u>Id.</u> at 769.

5

Case No.: 5:12-CV-05869
ORDER DENYING EBAY'S MOTION TO DISMISS THE UNITED STATES' COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

The alleged no-solicitation/no-hire agreement cannot amount to an actionable conspiracy, according to eBay, because, as officers and directors of the same company, the participants in the negotiations shared a "unity of purpose." Copperweld, 467 U.S. 771. The United States contends that the presence of a single overlapping director does not render two otherwise separate firms a single entity for antitrust purposes. Instead, insists the United States, the Complaint states a quid pro quo between the two separate entities.

As the parties' arguments make clear, the true dispute lies not in whether an agreement was struck, but on whose behalf Mr. Cook acted during the ongoing no-solicitation/no-hire discussions with various eBay executives. According to eBay, Mr. Cook only insisted on the agreement in order to assist him in his eBay board role by eliminating the appearance of divided loyalties. No. 12-CV-05869, Dkt. No. 15 at 10. As such, the policy "was adopted to facilitate a cohesive and cooperative relationship between the company and its Board." No. 12-CV-05869, Dkt. No. 26 at 3. To support this argument, eBay points to a paragraph in the Complaint that states Mr. Cook "was willing to sacrifice the welfare of Intuit's employees in order to advance his own personal interests in serving on eBay's Board." No. 12-CV-05869, Dkt. No. 1 ¶ 12. The United States, however, contends that "the inescapable inference is that Cook was acting in accord with Intuit's policies and business interests," and points to various references throughout the Complaint of Mr. Cook complaining "on behalf of Intuit about eBay's hiring practices." Id. at ¶¶ 12, 15, 22; Dkt. No. 24 at 8.

The Complaint contains allegations that Mr. Cook is not only the Founder of Intuit, but also served as the Chairman of its Executive Committee during the relevant time period. No. 12-CV-05869, Dkt. No. 1 ¶ 1. Such allegations permit the court to make the reasonable inference that Mr. Cook had the authority to bind Intuit to agreements. See Twombly, 550 U.S. at 556 (requiring antitrust plaintiffs to provide "plausible grounds to infer an agreement" sufficient to "raise a reasonable expectation that discovery will reveal evidence of illegal agreement"). As an executive with such power, Mr. Cook complained to eBay "on behalf of Intuit" about eBay's attempts to solicit or hire Intuit employees, committed Intuit to refraining from this same behavior, and expressed that "we," i.e. Intuit, would "ask the same" from eBay. No. 12-CV-05869, Dkt. No. 1 ¶¶

6

United States District Court
For the Northern District of California

1    12, 15.  These complaints and commitments allegedly induced an agreement restricting employee

2    solicitation and hiring between the two companies.  See id. at ¶ 15, 17-18, 21.  Thereafter, and

3    further supporting the plausibility of Intuit's participation in the agreement, Mr. Cook received

4    complaints from eBay about Intuit's, not Mr. Cook's, compliance with the agreement.  For

5    instance, the allegation that Mr. Cook responded to Ms. Whitman's complaints about Intuit's

6    continued solicitation of eBay employees by promising to investigate "how this slip up occurred

7    again" suggests not only that an agreement between the two companies had been established, but

8    also that Intuit executives other than Mr. Cook generally abided by it.  Id. at ¶ 22.  The court

9    acknowledges that while the Complaint is replete with examples of eBay's understanding of and

10   adherence to the agreement, they are not as illustrative of Intuit's behavior.  However, at this stage

11   in the litigation, the court finds that the United States has plausibly alleged an actionable agreement

12   between the two companies.

13        eBay's additional argument that Section 8 of the Clayton Act would preclude a finding of

14   an actionable agreement is tenuous at best.  Section 8 permits individuals to serve on boards of

15   multiple companies—i.e. serve as "interlocks"—so long as those companies are not meaningful

16   competitors.  See 15 U.S.C. § 19.  eBay is correct in pointing out that Section 8 generally "removes

17   from the coverage of interlock prohibitions arrangements that pose little risk of significant antitrust

18   injury."  No. 12-CV-05869, Dkt. No. 15 at 12 (citing ABA Section of Antitrust Law, Antitrust Law

19   Developments, at 438 (7th ed. 2012)).  However, Section 8 does not go so far as to provide

20   complete immunity from antitrust scrutiny.  In fact, other courts have found that the presence of

21   even multiple interlocks does not necessarily preclude the finding of an actionable agreement under

22   Section 1 of the Sherman Act.  See, e.g., In re Sulfuric Acid Antitrust Litigation, 743 F.Supp.2d

23   827, 884-86 (N.D. Ill. 2010) (finding on summary judgment that one entity's partial ownership of

24   another, along with overlapping directors, consolidated financial statements, and several integrated

25   business units between the two did not necessarily preclude the finding of an actionable agreement

26   because the extent of the owner-company's control over the partially-owned subsidiary was

27   disputed).  Here, neither party provides any evidence or argument showing that Mr. Cook's

28   interlock is an acceptable one under Section 8, let alone that the interlock is so irreproachable that

7

**United States District Court**
For the Northern District of California

1    it serves to immunize eBay and Intuit from Section 1 scrutiny.  Therefore, the court finds that

2    Section 8 does not preclude a finding that the United States has plausibly stated an actionable

3    agreement.

4                            **2.   Unreasonable Restraint of Trade**

5            eBay next argues that the United States has failed to adequately allege the second prong of

6    its Section 1 claim, an unreasonable restraint of trade.  Am. Ad Mgmt., 92 F. 3d at 788.  To

7    sufficiently plead an unreasonable restraint, a plaintiff must include allegations showing that the

8    restraint will fail under one of three rules of analysis: the rule of reason, per se, or quick look.  The

9    rule of reason is the default level of analysis and requires the court to examine "a variety of factors,

10   including specific information about the relevant business, its condition before and after the

11   restraint was imposed, and the restraint's history, nature, and effect."  State Oil Co. v. Khan, 522

12   U.S. 3, 10 (1997).  Because this rule requires substantial factual evidence, applying it can impose a

13   heavy burden on both litigants and the court.  See II Phillip E. Areeda, Herbert Hovenkamp, Roger

14   D. Blair & Christine Piette Durrance, Antitrust Law, ¶ 305e at 68 (3d ed. 2007) ("Areeda").  Courts

15   have found such a detailed inquiry to be unnecessary, however, when one of a limited class of

16   agreements— restraints that are so "manifestly anticompetitive" and lacking in "any redeeming

17   virtue"—has been proven.  Leegin Creative Leather Products., Inc. v. PSKS, Inc., 551 U.S. 877,

18   886 (2007); Nw. Wholesale Stationers v. Pac. Stationery and Printing Co., 472 U.S. 284, 289

19   (1985).  These types of restraints are instead considered illegal per se, and once established, do not

20   require any "elaborate industry analysis" otherwise required under the rule of reason.  Nat'l Soc. of

21   Prof. Eng'rs v. United States, 435 U.S. 679, 692 (1978); see Leegin, 551 U.S. at 886.  "Restraints

22   that are per se unlawful include horizontal agreements among competitors to fix prices or to divide

23   markets."  Leegin, 551 U.S. at 886.  Falling between the rule of reason and per se condemnation,

24   the "quick look" analysis is an abbreviated form of the rule of reason that may be used when "an

25   observer with even a rudimentary understanding of economics could conclude that the

26   arrangements in question could have an anticompetitive effect on customers and markets."  Cal.

27   Dental Ass'n v. Fed. Trade Comm'n, 526 U.S. 756, 770 (1999); Nat'l Collegiate Athletic Ass'n v.

28   Bd. of Regents of the Univ. of Okla., 468 U.S. 85, 109, n. 39 (1984) ("NCAA").

Case No.: 5:12-CV-05869
ORDER DENYING EBAY'S MOTION TO DISMISS THE UNITED STATES' COMPLAINT

1

### a. Pleading Requirements

2       eBay argues that the United States has failed to state an unreasonable restraint of trade

3   because it fails to include any allegations sufficient to state a rule of reason claim.  The United

4   States admits that it has omitted these allegations, but insists that the law does not require it to do

5   so when it only intends to pursue claims under the per se and quick look rules.  The court agrees

6   with the United States that it is not obliged to plead under each possible rule.  A plaintiff is the

7   master of its complaint and may choose which claims to allege.  The strategy of alleging only per

8   se and quick look violations is not an unprecedented one. See, e.g., Texaco, 547 U.S. at 7, n. 2; In

9   re Ins. Brokerage Antitrust Litig., 618 F.3d at 317.  However, the court cautions that the United

10  States must abide by the consequences of its pleading decisions.  Should the court ultimately find

11  that the United States cannot maintain a per se or quick look claim, the United States will then be

12  without recourse to the rule of reason and its case will be dismissed.  See Texaco, 547 U.S. at 7, n.

13  2 (reversing the Ninth Circuit's holding that the defendants' particular horizontal price fixing

14  agreement constituted a per se violation but declining to review the claim under the rule of reason

15  because the plaintiffs had not pled such a claim); Fox v. Good Samaritan Hosp., LP, No. 04-CV-

16  00874, 2008 WL 2805407 at * 4, n.3 (N.D. Cal. July 17, 2008) (finding that precedent does not

17  suggest "that a party can begin with a per se claim and when that is denied on summary judgment

18  much later try again on a rule of reason theory"); Cheatham's Furniture Co. v. La-Z-Boy Chair Co.,

19  728 F. Supp. 569, 571-72 (E.D. Mo. 1989) (finding that the plaintiff failed to prove its per se

20  vertical price fixing claim and granting summary judgment to defendant, even though the claim

21  may have survived under the rule of reason, because the plaintiff had not pled such a claim); Inter-

22  City Tire and Auto Center, Inc. v. Uniroyal, Inc., 701 F. Supp. 1120, 1123 (D. N.J. 1988) (granting

23  summary judgment to the defendant on the plaintiff's per se vertical price fixing and resale price

24  maintenance claims and declining to consider the claim under the rule of reason because plaintiff

25  had not pled a rule of reason claim).

26      ### b. Rule Determination

27      eBay argues that even if, as here, the court finds that the United States need not plead a rule

28  of reason claim, its Complaint must nevertheless be dismissed because it has failed to state a claim

9

Case No.: 5:12-CV-05869
ORDER DENYING EBAY'S MOTION TO DISMISS THE UNITED STATES' COMPLAINT

United States District Court
For the Northern District of California

1    under either of the rules that the United States has chosen to pursue.  Thus, the court must next

2    determine whether the United States has adequately alleged a Section 1 violation under either the

3    per se or quick look rules.

### i.  Per Se Unreasonableness

4

5    The United States maintains that eBay's no-solicitation/no-hire agreement with Intuit is per

6    se unreasonable because it amounts to a naked market allocation that distorts the competitive

7    recruiting process for skilled high-tech employees.  See No. 12-CV-05869, Dkt. No. 1 ¶¶ 10-11,

8    27; Dkt. No. 24 at 10.  Particularly the United States alleges that eBay and Intuit are direct

9    competitors for employees, especially skilled engineers and scientists, and that the two companies

10   agreed to not solicit or hire each others' employees.  This agreement, according to the United

11   States, suppressed competition between the two companies and affected their employees' mobility

12   and compensation.  No. 12-CV-05869, Dkt. No. 1 ¶ 32.  eBay argues that these allegations are

13   insufficient because (1) they do not amount to a classic horizontal market allocation, and (2) even

14   if they do, such an agreement is ancillary to a procompetitive business purpose and thus not subject

15   to the per se rule.  At this stage in the litigation, the court finds neither of these arguments

16   persuasive.

17   A horizontal market allocation typically constitutes a per se violation of Section 1.  See

18   United States v. Topco Assocs., 405 U.S. 596, 608 (1972); United States v. Brown, 936 F.2d 1042,

19   1044-45 (9th Cir. 1991) ("A market allocation agreement between two companies at the same

20   market level is a classic per se antitrust violation.")  Notwithstanding eBay's argument to the

21   contrary, the facts that the alleged market allocation in this case occurs in an input market, i.e. the

22   employment market, and that the United States has failed to include allegations outlining a specific

23   labor market definition do not as a matter of law prevent the court from finding that the agreement

24   as stated amounts to a "classic" horizontal market division.  Antitrust law does not treat

25   employment markets differently from other markets in this respect:

26   Antitrust law addresses employer conspiracies controlling employment terms precisely

27   because they tamper with the employment market and thereby impair the opportunities of

28   those who sell their services there.  Just as antitrust law seeks to preserve the free market

10

Case No.: 5:12-CV-05869
ORDER DENYING EBAY'S MOTION TO DISMISS THE UNITED STATES' COMPLAINT

United States District Court
For the Northern District of California

1      opportunities of buyers and sellers of goods, so also it seeks to do the same for buyers and

2      sellers of employment services.

3    IIA Areeda ¶ 352c at 254-55 (3d ed. 2007); see, e.g., Roman v. Cessna Aircraft Co., 55 F.3d 542

4    (10th Cir. 1995) (finding that the plaintiff, an airplane engineer, had adequately pled antitrust

5    standing in a suit challenging two airline manufacturers' no-hire agreement).  Moreover, "[a]n

6    agreement among employers that they will not compete against each other for the services of a

7    particular employee or prospective employee is, in fact, a service division agreement, analogous to

8    a product division agreement." XII Areeda ¶ 2013b at 143.  The court thus finds that the United

9    States' allegations concerning the agreement between eBay and Intuit, taken as true, suffice to state

10   a horizontal market allocation agreement.

11        The fact that the court finds that the United States adequately alleged a market allocation

12   agreement does not in and of itself indicate that per se treatment is imminent.  Rather, a market

13   allocation agreement or any other restraint traditionally subject to per se treatment will only be

14   found to be per se illegal if it "facially appears to be one that would almost always tend to restrict

15   competition and decrease output," i.e. if it is a naked restraint on trade.  NCAA, 468 U.S. at 100

16   (citation omitted).  In contrast, "[w]hen a defendant advances plausible arguments that a practice

17   enhances overall efficiency and makes markets more competitive, per se treatment is inappropriate,

18   and the rule of reason applies."  Paladin Assoc., Inc. v. Montana Power Co., 328 F.3d 1145, 1155

19   (9th Cir. 2003).  Thus, to make a rule determination, the court must first consider whether the

20   alleged no-solicitation/no hire agreement is ancillary to a procompetitive business purpose. See

21   Broad. Music, Inc. v. Columbia Broad. Sys., Inc., 441 U.S. 1, 19-22 (1979) ("BMI"); see also XII

22   Areeda ¶ 2013a at 142 (explaining that if agreements among employers not to compete for

23   employees "are 'naked' and not immunized, they are illegal per se….").

24        eBay challenges the United States' assertion that the alleged agreement is a naked one,

25   instead arguing that the agreement is ancillary to a legitimate procompetitive business purpose: Mr.

26   Cook's service on eBay's board.  The court agrees with eBay's contention that the fact that the

27   United States labeled the agreement a naked one does not make it so.  By the same token, however,

28   the court cannot hold that the agreement is ancillary simply because eBay posits that it is.  The

United States District Court
For the Northern District of California

11

Case No.: 5:12-CV-05869
ORDER DENYING EBAY'S MOTION TO DISMISS THE UNITED STATES' COMPLAINT

1
2
3
4

court must instead make that determination based on factual evidence relating to the agreement's formation and character. See, e.g., XI Areeda ¶ 1910b at 311 ("Of course, even in the per se case the relevant facts have to be established and the restraint has to be "characterized" for inclusion or exclusion from the per se category.").

5
6
7
8
9
10
11
12
13
14
15
16

Though the parties supply substantial legal argument to support their respective positions, they do so without the benefit of discovery, and thus without sufficient factual evidence to support their contentions. At this stage in this action, the court simply cannot determine with certainty the nature of the restraint, and by extension, the level of analysis to apply.[1] See II Areeda ¶ 305e at 69 ("Often, however, the decision about which rule is to be employed will await facts that are developed only in discovery."). Thus, taking the allegations in the Complaint as true, the court cannot determine as a matter of law that per se treatment will be inappropriate. See, e.g., Cal. Dental Ass'n, 526 U.S. at 779 ("The truth is that our categories of analysis of anticompetitive effect are less fixed than terms like " per se," "quick look," and "rule of reason" tend to make them appear. We have recognized, for example, that 'there is often no bright line separating per se from Rule of Reason analysis,' since 'considerable inquiry into market conditions' may be required before the application of any so-called "per se " condemnation is justified.") (citations omitted).

17

### ii.   Unreasonableness under the "Quick Look" Rule

18
19
20
21
22
23
24

The United States contends in the alternative that if the per se rule does not apply, the court will be able to find a Section 1 violation after applying a quick look analysis to eBay's no-solicitation/no-hire agreement. Courts use the quick look rule when (1) the plaintiff shows that the challenged restraint falls into one of the general per se categorizations, but (2) the agreement or the nature of the market in which the agreement is made is sufficiently unfamiliar to refrain from applying the per se rule, and (3) the defendant offers preliminary evidence suggesting that the challenged restraint is reasonably necessary to some precompetitive activity. See XI Areeda ¶ 1911

25
26
27
28

---

[1] Similarly, the court cannot at this early stage determine what weight to afford evidence of the DOJ's consent decrees with other employers, which provide a list of exceptions to the prohibition of entering into no-solicitation/no-hire agreements, in determining which rule should apply. See BMI, 441 U.S. at 13 (finding that while a consent decree may be "a unique indicator that the challenged practice may have redeeming competitive virtues," it "does not immunize the defendant from liability for actions, including those contemplated by the decree, that violate the rights of non-parties.")

12

Case No.: 5:12-CV-05869
ORDER DENYING EBAY'S MOTION TO DISMISS THE UNITED STATES' COMPLAINT

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1     at 335-36. As discussed in the previous section, the United States has sufficiently pled the

2     existence of a restraint on trade of a type that is subject to per se treatment. As such, the United

3     States has also sufficiently pled the existence of the type of restraint that may fall under the ambit

4     of the quick look rule. For the same reasons as stated in the previous section, the court cannot at

5     this early stage make a determination as to which rule will apply. Thus, the court cannot find as a

6     matter of law that the quick look rule will not apply to the challenged agreement in this case.

7     **IV.     CONCLUSION**

8          For the foregoing reasons, the court DENIES eBay's Motion to Dismiss the United States'

9     Complaint. eBay is ORDERED to file its Answer by no later than October 11, 2013.

10          In addition, the court hereby sets a Case Management Conference for November 15, 2013

11     at 10:00 a.m. The parties shall submit their Joint Case Management Conference Statement by no

12     later than November 8, 2013.

13     **IT IS SO ORDERED.**

14     Dated: September 27, 2013



                            EDWARD J. DAVILA
                            United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.: 5:12-CV-05869
ORDER DENYING EBAY'S MOTION TO DISMISS THE UNITED STATES' COMPLAINT