N. Scott Sacks, Attorney (D.C. Bar No. 913087)
Jessica N. Butler-Arkow, Attorney (D.C. Bar No. 430022)
Anna T. Pletcher, Attorney (California Bar No. 239730)
Adam Severt, Attorney (Member, Maryland Bar, numbers not assigned)
Ryan Struve, Attorney (D.C. Bar No. 495406)
United States Department of Justice, Antitrust Division
450 Fifth Street, NW, Suite 7100
Washington, DC  20530
Telephone:  (202) 307-6200
Facsimile:  (202) 616-8544
E-mail: scott.sacks@usdoj.gov

Attorneys for Plaintiff United States of America

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              *Plaintiff*,<br><br>                    v.<br><br>EBAY INC.<br><br>                              *Defendant*. | Case No. 12-CV-05869-EJD<br><br>PLAINTIFF'S MOTION AND MEMORANDUM IN SUPPORT OF ENTRY OF FINAL JUDGMENT |

Pursuant to Section 2(b) of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16(b)-(h) ("APPA" or "Tunney Act"), the United States moves for entry of the Proposed Final Judgment filed in this civil antitrust case.  The Proposed Final Judgment (attached as Exhibit A) may be entered at this time without further hearing if the Court determines that entry is in the public interest.[1]  The Defendant has stipulated to entry of the Proposed Final Judgment without further notice to any party or other proceedings.  No member of the public has requested a hearing.  The Competitive Impact Statement ("CIS"), filed by the United States

---

[1] The Proposed Final Judgment attached to this motion is identical to the one originally filed on May 1, 2014 (Dkt. No. 57).

on May 1, 2014 (Dkt. No. 58), explains why entry of the Proposed Final Judgment is in the public interest.  The United States is filing simultaneously with this motion a Certificate of Compliance (attached as Exhibit B) setting forth the steps taken by the parties to comply with all applicable provisions of the APPA and certifying that the statutory waiting periods have expired.

## I.    BACKGROUND

On November 16, 2012, the United States filed the Complaint in this matter, alleging that Defendant eBay Inc. had entered into an agreement with Intuit, Inc. not to solicit each other's employees and eBay agreed not to hire Intuit employees (Dkt. No. 1).  Such agreements were *per se* unlawful under Section 1 of the Sherman Act, 15 U.S.C. § 1.  An Amended Complaint was filed on June 6, 2013 (Dkt. No. 36).

On May 1, 2014, the parties filed a Stipulation and Proposed Final Judgment, which is designed to eliminate the anticompetitive effects of the agreements and preserve competition in the labor market, particularly for high technology workers, by preventing Defendant from entering into similar agreements in the future and imposing obligations to educate executives about the Final Judgment, as well as annually report its compliance with the Final Judgment to the United States (Dkt. No. 57).  On that same date, the United States also filed a CIS (Dkt. No. 58).

Entry of the Proposed Final Judgment would terminate this action, except that the Court would retain jurisdiction to construe, modify, or enforce the provisions of the Final Judgment and to punish violations thereof.

## II.    COMPLIANCE WITH THE APPA

The APPA requires a sixty-day period for the submission of public comments on a proposed Final Judgment. *See* 15 U.S.C. § 16(b). In compliance with the APPA, the United States filed the CIS on May 1, 2014; published the Proposed Final Judgment and CIS in the Federal Register on May 14, 2014 (*see* 79 Fed. Reg. 27639); and ensured that summaries of the terms of the Proposed Final Judgment and CIS, together with directions for the submission of

written comments relating to the Proposed Final Judgment, were published in *The Washington Post* for seven days beginning on May 14, 2014 and ending on May 20, 2014, and the San Jose Mercury News beginning on May 19, 2014 and ending on May 26, 2014. The sixty-day public comment period terminated on March 17, 2014, and the United States received no public comments. Simultaneously with this Motion and Memorandum, the United States is filing a Certificate of Compliance that states all the requirements of the APPA have been satisfied. It is now appropriate for the Court to make the public interest determination required by 15 U.S.C. § 16(e) and to enter the Proposed Final Judgment.

## III.    STANDARD OF JUDICIAL REVIEW

The APPA requires that proposed consent judgments in antitrust cases brought by the United States be subject to a sixty-day comment period, after which the court shall determine whether entry of the Proposed Final Judgment "is in the public interest." 15 U.S.C. § 16(e)(1). In making that determination in accordance with the statute, the court is required to consider:

(A) the competitive impact of such judgment, including termination of alleged violations, provisions for enforcement and modification, duration of relief sought, anticipated effects of alternative remedies actually considered, whether its terms are ambiguous, and any other competitive considerations bearing upon the adequacy of such judgment that the court deems necessary to a determination of whether the consent judgment is in the public interest; and

(B) the impact of entry of such judgment upon competition in the relevant market or markets, upon the public generally and individuals alleging specific injury from the violations set forth in the complaint including consideration of the public benefit, if any, to be derived from a determination of the issues at trial.

15 U.S.C. § 16(e)(1)(A)-(B). In considering these statutory factors, the court's inquiry is necessarily a limited one as the government is entitled to "broad discretion to settle with the defendant within the reaches of the public interest." *United States v. Microsoft Corp.*, 56 F.3d 1448, 1461 (D.C. Cir. 1995); *see generally United States v. SBC Commc'ns, Inc.*, 489 F. Supp.

2d 1 (D.D.C. 2007) (assessing public interest standard under the Tunney Act); *United States v. InBev N.V./S.A.*, 2009-2 Trade Cas. (CCH) ¶76,736, 2009 U.S. Dist. LEXIS 84787, No. 08-1965 (JR), at *3 (D.D.C. Aug. 11, 2009) (noting that the court's review of a consent judgment is limited and only inquires "into whether the government's determination that the proposed remedies will cure the antitrust violations alleged in the complaint was reasonable, and whether the mechanisms to enforce the final judgment are clear and manageable").

As the United States Court of Appeals for the District of Columbia has held, under the APPA, a court considers, among other things, the relationship between the remedy secured and the specific allegations set forth in the government's complaint, whether the decree is sufficiently clear, whether enforcement mechanisms are sufficient, and whether the decree may positively harm third parties. *See Microsoft*, 56 F.3d at 1458-62. With respect to the adequacy of the relief secured by the decree, a court may not "engage in an unrestricted evaluation of what relief would best serve the public." *United States v. BNS, Inc*., 858 F.2d 456, 462 (9th Cir. 1988) (citing *United States v. Bechtel Corp*., 648 F.2d 660, 666 (9th Cir. 1981)); *see also Microsoft*, 56 F.3d at 1460-62; *United States v. Alcoa, Inc.*, 152 F. Supp. 2d 37, 40 (D.D.C. 2001); *InBev*, 2009 U.S. Dist. LEXIS 84787, at *3. Courts have held that:

> [t]he balancing of competing social and political interests affected by a proposed antitrust consent decree must be left, in the first instance, to the discretion of the Attorney General. The court's role in protecting the public interest is one of insuring that the government has not breached its duty to the public in consenting to the decree. The court is required to determine not whether a particular decree is the one that will best serve society, but whether the settlement is "*within the reaches of the public interest*." More elaborate requirements might undermine the effectiveness of antitrust enforcement by consent decree.

*Bechtel*, 648 F.2d at 666 (emphasis added) (citations omitted).[2]   In determining whether a proposed settlement is in the public interest, the court "must accord deference to the

---

[2] *Cf. BNS*, 858 F.2d at 464 (holding that the court's "ultimate authority under the [APPA] is limited to approving or disapproving the consent decree"); *United States v. Gillette Co.*, 406 F. Supp. 713, 716 (D. Mass. 1975) (noting that, in this way, the court is constrained to "look at the overall picture not hypercritically, nor with a microscope, but with an artist's reducing glass"). *See generally Microsoft*, 56 F.3d at 1461 (discussing whether "the remedies [obtained in the decree are]

1    government's predictions about the efficacy of its remedies, and may not require that the

2    remedies perfectly match the alleged violations." *SBC Commc'ns*, 489 F. Supp. 2d at 17; *see*

3    *also Microsoft*, 56 F.3d at 1461 (noting the need for courts to be "deferential to the

4    government's predictions as to the effect of the proposed remedies"); *United States v. Archer-*

5    *Daniels-Midland Co.*, 272 F. Supp. 2d 1, 6 (D.D.C. 2003) (noting that the court should grant

6    due respect to the United States's prediction as to the effect of proposed remedies, its

7    perception of the market structure, and its views of the nature of the case); *United States v.*

8    *Republic Servs., Inc.*, 2010-2 Trade Cas. (CCH) ¶ 77,097, 2010 U.S. Dist. LEXIS 70895, No.

9    08-2076 (RWR), at *10 (D.D.C. July 15, 2010) (finding that "[i]n light of the deferential

10   review to which the government's proposed remedy is accorded, [amicus curiae's] argument

11   that an alternative remedy may be comparably superior, even if true, is not a sufficient basis for

12   finding that the proposed final judgment is not in the public interest").

13           Courts have greater flexibility in approving proposed consent decrees than in crafting

14   their own decrees following a finding of liability in a litigated matter. "[A] proposed decree

15   must be approved even if it falls short of the remedy the court would impose on its own, as long

16   as it falls within the range of acceptability or is 'within the reaches of public interest.'" *United*

17   *States v. Am. Tel. & Tel. Co.*, 552 F. Supp. 131, 151 (D.D.C. 1982) (citations omitted) (quoting

18   *United States v. Gillette Co.*, 406 F. Supp. 713, 716 (D. Mass. 1975)), *aff'd sub nom. Maryland*

19   *v. United States*, 460 U.S. 1001 (1983); *see also United States v. Alcan Aluminum Ltd.*, 605

20   F.Supp. 619, 622 (W.D. Ky. 1985) (approving the consent decree even though the court would

21   have imposed a greater remedy). Therefore, the United States "need only provide a factual

22   basis for concluding that the settlements are reasonably adequate remedies for the alleged

23   harms." *SBC Commc'ns*, 489 F. Supp. 2d at 17; *Republic Serv.*, 2010 U.S. Dist. LEXIS 70895,

24   at *2-3 (entering final judgment "[b]ecause there is an adequate factual foundation upon which

25

26

27   so inconsonant with the allegations charged as to fall outside of the 'reaches of the public
     interest'").

28

to conclude that the government's proposed divestitures will remedy the antitrust violations alleged in the complaint").

Moreover, in its 2004 amendments to the Tunney Act,[3] Congress made clear its intent to preserve the practical benefits of utilizing consent decrees in antitrust enforcement, stating: "[n]othing in this section shall be construed to require the court to conduct an evidentiary hearing or to require the court to permit anyone to intervene." 15 U.S.C. § 16(e)(2). The language wrote into the statute what Congress intended when it enacted the Tunney Act in 1974, as Senator Tunney explained: "[t]he court is nowhere compelled to go to trial or to engage in extended proceedings which might have the effect of vitiating the benefits of prompt and less costly settlement through the consent decree process." 119 Cong. Rec. 24,598 (1973) (statement of Senator Tunney). Rather, the procedure for the public interest determination is left to the discretion of the court, with the recognition that the court's "scope of review remains sharply proscribed by precedent and the nature of Tunney Act proceedings." *SBC Commc'ns*, 489 F. Supp. 2d at 11.[4]

As set forth more fully in the CIS, the Proposed Final Judgment provides an effective remedy by prohibiting eBay from entering or maintaining any no-soliciting or no-hiring agreement with Intuit, or any other firm, that would restrain competition and further contains

---

[3] The 2004 amendments substituted the word "shall" for "may" when directing the courts to consider the enumerated factors and amended the list of factors to focus on competitive considerations and address potentially ambiguous judgment terms. *Compare* 15 U.S.C. § 16(e) (2004), *with* 15 U.S.C. § 16(e)(1) (2006); *see also SBC Commc'ns*, 489 F. Supp. 2d at 11 (concluding that the 2004 amendments "effected minimal changes" to Tunney Act review).

[4] *See United States v. Enova Corp.*, 107 F. Supp. 2d 10, 17 (D.D.C. 2000) (noting that the "Tunney Act expressly allows the court to make its public interest determination on the basis of the competitive impact statement and response to comments alone"); *United States v. Mid-Am. Dairymen, Inc.*, 1977-1 Trade Cas. (CCH) ¶ 61,508, at 71,980 (W.D. Mo. 1977) ("Absent a showing of corrupt failure of the government to discharge its duty, the Court, in making its public interest finding, should . . . carefully consider the explanations of the government in the competitive impact statement and its responses to comments in order to determine whether those explanations are reasonable under the circumstances."); S. Rep. No. 93-298, 93d Cong., 1st Sess., at 6 (1973) ("Where the public interest can be meaningfully evaluated simply on the basis of briefs and oral arguments, that is the approach that should be utilized.").

compliance provisions to provide some assurance that such anticompetitive conduct does not recur.  The public, including employees and potential employees as well as other firms competing in the labor market, has had the opportunity to comment on the Proposed Final Judgment as required by law, and no comments or requests for hearing have been submitted. There has been no showing that the proposed settlement constitutes an abuse of the United States' discretion or that it is not within the range of settlements consistent with the public interest.

**IV.    CONCLUSION**

For the reasons set forth in this Motion and Memorandum and in the CIS, the Court should find that the proposed Final Judgment is in the public interest and enter the Final Judgment without further hearing. The United States respectfully requests that the Proposed Final Judgment, attached hereto as Exhibit A, be entered as soon as possible.

August 21, 2014                               Respectfully submitted,


_____ /s/ N.Scott Sacks
N. Scott Sacks
Attorney
United States Department of Justice
Antitrust Division
450 5th Street, NW, Suite 7100
Washington, DC 20530
Telephone:  (202) 307-6200
Facsimile:  (202) 616-8544
E-mail: scott.sacks@usdoj.gov